**Fred HOLLAND, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 582S193.

Supreme Court of Indiana.

Oct. 12, 1983.

Gregory Nicosia, Griffith, for appellant.

Linley E. Pearson, Atty. Gen., Latr400alle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was convicted by a jury for murder and was sentenced to thirty-five (35) years of imprisonment.

The facts in the light most favorable to the verdict show the murder was the result of a four month competition for the affection of Elizabeth Green. Miss Green and the appellant had dated from 1977 to 1980. They had a child by that relationship but did not marry. In 1980, appellant went to California to seek employment in hopes of convincing Miss Green to come to California and marry him. In his absence, Miss Green began to date Arthur Williams. When appellant returned from California in January of 1981, he became aware of the change in the affections of Miss Green. Shortly after his return, appellant and Williams had a confrontation in the presence of Miss Green. Both men had weapons at that time but neither drew their weapon.

On April 4, 1981, appellant and Miss Green had an argument in a local liquor store. During the argument Green was struck on the head with a bottle. Later that day Gordon Green, Elizabeth's brother, sought out appellant and warned him to stay away from Elizabeth's home.

On April 7, 1981, Elizabeth, Gordon Green, another sister of Gordon and Elizabeth, and Arthur Williams were in the front yard of the Green home. Appellant and two of his friends arrived at the Green home for the purpose of picking up the child for an evening visit. Holland was told to leave and he did so, only to return, by himself, a few minutes later. Witnesses testified appellant had a handgun at this time. He walked toward Williams and fired five or six shots at Williams. Some of the shots were fired into the prone body of Williams as appellant stood over him.

Appellant testified in his own behalf. He stated the earlier meetings between himself, Gordon Green and Williams resulted in threats against appellant's life. He testified he returned to the Green home the second time only to get the child after the mother had been given a chance to gather the child's belongings. He stated when he exited the car he saw both Williams and Gordon Green armed. They started to shoot at him so he grabbed his gun and began to return the fire. He contends Arthur Williams was killed during the shootout.

Appellant suggests the facts presented support a finding by the jury of self-defense or in the alternative that the appellant acted in sudden heat. In *Johnson v. State,* (1980) Ind., 409 N.E.2d 621, we stated the rules for the issue of sufficiency of the evidence to negate a self-defense

claim. We held the defendant must show 1) he was in a place he had a right to be, 2) he acted without fault and 3) he acted in reasonable fear or apprehension of death or great bodily harm. The defense need only raise the issue then the State must prove beyond a reasonable doubt the absence of one or more of the factors. *Id.* 622. As with other sufficiency questions, this Court will not reweigh the evidence and if substantial evidence of probative value exists to support the verdict it will not be overturned. *Poindexter v. State,* (1978) 268 Ind. 167, 374 N.E.2d 509. Although the jury is to look from the defendant's viewpoint when considering facts relevant to self-defense, the trier of fact is not required to believe the defendant's evidence. *Harris v. State,* (1978) 269 Ind. 672, 382 N.E.2d 913. This jury was free to believe whomever they pleased. We believe sufficient evidence existed to allow a jury to find beyond a reasonable doubt the appellant did not act without fault or with a reasonable fear of death or great bodily harm. We hold the evidence supports the verdict.

Appellant in the alternative suggests the jury should have found the mitigating factor of sudden heat present to reduce the crime from murder to voluntary manslaughter. He argues the State must negate the existence of sudden heat beyond a reasonable doubt. He offers no support for this position other than it would be logical to extend this principle from the self-defense justification to the sudden heat defense. In *Wolfe v. State,* (1981) Ind., 426 N.E.2d 647, we examined the operation of sudden heat as a mitigating factor. We noted sudden heat was not an element the State must prove to support a voluntary manslaughter conviction. We said if the defendant raises the issue and offers proof then the State must prove the absence of sudden heat beyond a reasonable doubt. We believe the law is as the appellant suggests it should be.

██ This defense is one that requires the jury to resolve facts and this jury was instructed on the operation of sudden heat. Substantial evidence, in the case at bar, existed to support the finding the defendant did not act in sudden heat.

██ Appellant's second and third arguments concern the court's failure to grant a mistrial. In *Ramos v. State,* (1982) Ind., 433 N.E.2d 757, we reaffirmed the granting of a mistrial lies within the sound discretion of the trial judge. His determinations will be reversed only where an abuse of that discretion can be established. If the jury is admonished by the trial court to disregard what has occurred at trial or if reasonable curative measures are taken, no reversible error will ordinarily be found. *Id.* at 759.

The first mistrial issue concerns a remark made by the prosecutor during his final argument. The appellant had testified "I left [the scene of the crime] and I went to my house and dropped off the gun. And I didn't want to stay there because I was upset with what happened .... I was going down [the street] and the police officer stopped and arrested me." During the final argument the prosecutor said: "If we are to believe Mr. Holland, after the incident occurred, he went home and put his gun under the bed. If he is innocent, why didn't he call the police at that time and tell them that someone tried to kill him?" The appellant's counsel moved for a mistrial at that point. He argued the defendant was not obligated to come forward and give testimony. He contended the prosecutor's remarks were aimed at the defendant's failure to testify and thus were improper. The trial court denied them.

██ Appellant submits a prosecutor may not directly or indirectly comment upon the failure of the defendant to testify. Such remarks will be strictly regarded as impinging upon the substantial rights of the defendant. *Rowley v. State,* (1975) 259 Ind. 209, 285 N.E.2d 646. We do not view the remarks of the prosecuting attorney as an attempt to comment on appellant's failure to testify as to any fact. It appears to us to be abundantly clear that the prosecuting attorney was arguing a conclusion based on the evidence offered by the appellant. The appellant had testified as to hiding the gun and fleeing. The prosecutor

was providing an assessment of the logic of the defendant's testimony when he made the remarks. We believe the comment reflected analysis of testimony given rather than comments made on the silence of the defendant. The trial court did not abuse its discretion in failing to grant a mistrial on this issue.

■ Appellant's second mistrial claim also concerns alleged prosecutorial error. During the course of the trial, the court ordered the suppression of evidence regarding a consent form signed by the defendant to allow a search for the gun within defendant's home. The judge also suppressed all references to the search for the gun. At trial, State's witness, Officer Riddle was asked, "Was the gun, in fact, recovered?" to which he replied, "No sir it wasn't." Defendant's counsel moved at that time for a mistrial based upon the violation of the suppression order. The judge denied the motion but did admonish the jury as follows:

> "The last question by the prosecutor to the witness, relative to whether or not the gun had been located and his answer, no. I'm ordering that stricken from the record. I'm ordering you to disregard that entirely. You are not to speculate as to why the ruling of the court. You are not to infer anything from that. Do you all understand that? Do you all understand that? You are not to infer anything from that. That is no longer in the record. Does anybody have any problem with that?"

We have held, if the jury is admonished or other reasonable curative measures are taken, no reversible error will be found. *Ramos, supra.* In the case at bar the judge did admonish the jury and took careful steps to correct any errors that might have existed. The actions of the judge were sufficient.

The trial court is in all things affirmed.

All Justices concur.