**Michael W. VANWAY, Appellant (Defendant Below),**

*v.*

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 82S00–8606–CR–598.**

Supreme Court of Indiana.

July 26, 1989.

John P. Brinson, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

The defendant, Michael W. VanWay, was convicted of forgery and found to be a habitual offender. His appeal raises the following issues:

1) effect of alleged discovery violation upon confession admissibility;

2) effect of *corpus delicti* proof on confession admissibility;

3) admissibility of evidence of prior criminal conduct;

4) chain of custody;

5) in-court identification;

6) refusal of tendered instruction on lesser included offense;

7) sufficiency of habitual offender evidence; and

8) propriety of final argument.

We affirm.

### 1. Discovery Violation

The defendant first contends that the trial court erred in admitting State's Exhibit 9, a prior statement made by the defendant, because of the State's failure to timely produce the statement in accordance with the trial court's orders regarding discovery.

State's Exhibit 9 was a statement given by the defendant regarding two forged checks in Marshall County. It was taken by the Plymouth, Indiana, Police Department on June 25, 1985. On September 30, 1985, the defendant filed a request in the present Vanderburgh County case for discovery of any written or recorded statements and the substance of any oral statements made by the defendant, and a list of witnesses to the making and acknowledgment of such statements "whether or not charged in this case." In June 1985, Officer Bagbey of the Evansville Police Department sent a letter to the Marshall County sheriff's office regarding the statement. On November 25, 1985, he sent a second letter indicating that he had not received the statement and that the trial was set for December 4, 1985. Sgt. Hunter of the Plymouth Police Department telephoned Bagbey, giving Bagbey the impression the package had been mailed. Bagbey received a copy of the statement in the mail on Friday, November 29, 1985, and delivered a copy of the statement to the defendant's counsel the following Monday, two days before trial.

The defendant's motion to suppress the statement was denied by the trial court, and subsequent objections were overruled. The defendant contends that the prosecutor acted with bad faith in failing to obtain the statement as soon as possible after the motion for discovery had been filed by the defendant.

■■■ A trial judge has the responsibility to direct the trial in a manner that facilitates the ascertainment of truth, ensures fairness, and obtains economy of time and effort commensurate with the rights of society and the criminal defendant. *Allen v. State* (1982), Ind., 439 N.E.2d 615; *State ex rel. Keller v. Criminal Court of Marion County* (1974), 262 Ind. 420, 317 N.E.2d 433; *Reid v. State* (1978), 267 Ind. 555, 372 N.E.2d 1149; *Bernard v. State* (1967), 248 Ind. 688, 230 N.E.2d 536. Where there has been a failure to comply with discovery procedures,

the trial judge is usually in the best position to determine the dictates of fundamental fairness and whether any resulting harm can be eliminated or satisfactorily alleviated. *Reid*, 267 Ind. at 565, 372 N.E.2d at 1155. Where remedial measures are warranted, a continuance is usually the proper remedy, but exclusion of evidence may be appropriate where the discovery non-compliance has been flagrant and deliberate, or so misleading or in such bad faith as to impair the right of fair trial. *Wagner v. State* (1985), Ind., 474 N.E.2d 476; *Crenshaw v. State* (1982), Ind., 439 N.E.2d 620. The trial court must be given wide discretionary latitude in discovery matters since it has the duty to promote the discovery of truth and to guide and control the proceedings, and will be granted deference in assessing what constitutes substantial compliance with discovery orders. *Allen*, 439 N.E.2d at 618; *Harris v. State* (1981), Ind., 425 N.E.2d 112. Absent clear error and resulting prejudice, the trial court's determinations as to violations and sanctions should not be overturned. *Wagner*, 474 N.E.2d 476; *Murray v. State* (1982), Ind., 442 N.E.2d 1012.

■ Considering the absence of prosecutorial bad faith or flagrant and deliberate non-compliance, we find no abuse of discretion in the trial court's rulings on this issue.

### 2. Corpus Delicti

■ The defendant further claims error in the admission of State's Exhibit 9 for the reason that it constituted a confession for which there was no independent proof of *corpus delicti*. The defendant aptly notes that Exhibit 9 was not a confession of the charged offense, but a confession of separate crimes used to prove common scheme or plan. He argues that the purpose of the *corpus delicti* rule should nevertheless be applicable, "whether the confession is used to convict a defendant directly or indirectly." The State responds that the rule protects an individual from being convicted of a crime solely based on his own confession,

but that since the defendant was not on trial for crimes admitted in the confession, the *corpus delicti* rule was inapplicable.

The purpose of the rule was expressed by Justice DeBruler in *Cambron v. State* (1975), 262 Ind. 660, 665, 322 N.E.2d 712, 715:

In order to avoid the risk of convicting someone for a crime which he confessed, but which never occurred, a confession must be excluded, unless the State introduces corroborating evidence concerning the *corpus delicti*.

Because State's Exhibit 9 did not constitute a confession to the charged offense, we agree with the State that the purposes served by the rule did not support its applicability to exclude State's Exhibit 9 in the present case.[1] We find no error on this issue.

### 3. Admissibility of Criminal Conduct

The defendant next contends that the trial court erred by admitting in evidence over his objection State's Exhibits 7 and 9 evidencing a separate and distinct forgery offense.

■ It is well settled that evidence of other crimes committed by a defendant, separate and distinct from the instant charge, is generally inadmissible to prove the guilt of the accused. *Pharms v. State* (1985), Ind., 476 N.E.2d 120. However, this Court recognizes a "common scheme or plan" exception, one branch of which permits proof of identity by showing the defendant committed another crime with identical *modus operandi*. *Staton v. State* (1988), Ind., 524 N.E.2d 6. This exception requires a strong showing that the methods used in the crimes are strikingly similar in a unique manner that indicates a common perpetrator. *Id.* at 8. *See Penley v. State* (1987), Ind., 506 N.E.2d 806.

■ In order to prove the charged offense, the State was required to establish the identity of the defendant as the person who on May 8, 1985, uttered check number 621 drawn on the account of the Greater

1. Because of our decisions with respect to State's Exhibit 9, we need not address the defen- dant's claim that State's Exhibits 4 and 7 were irrelevant absent State's Exhibit 9.

Vincennes Ministerial Association at Security Bank and Trust Company of Vincennes, Indiana, payable to Guaranteed Termite Pest Service and purported to be signed by "Rev. H. Schaffer." In State's Exhibit 9, the defendant admitted unlawfully cashing two checks in Plymouth, Marshall County, Indiana. The first, State's Exhibit 7, consisted of check number 2088 drawn on the account of "L & G Restaurant at Citizen's Bank of Michigan City, Indiana," payable to Michael VanWay in the sum of $366, purporting to be signed by Larry Johnson, dated May 11, 1985, and shown to be for "pest control (termites)." The second, State's Exhibit 4, consisted of check number 619 drawn on the account of the Greater Vincennes Ministerial Association, payable to Michael VanWay in the sum of $319, purporting to be signed by Rev. J. Schaffer, dated May 6, 1985, and written for "painting church."

The confession in State's Exhibit 9 referred to both forgeries, one of which, State's Exhibit 4, was unquestionably admissible. Admitting that State's Exhibit 7 is his forgery, the defendant argues that this "does not automatically make it admissible against him in a prosecution for a separate forgery" because of the absence of "enough similarities." While noting that at trial the defendant unsuccessfully sought to have State's Exhibit 9 redacted to eliminate reference to the forgery shown by Exhibit 7, we conclude that the trial court's refusal was harmless under the circumstances. Because the prior forgery represented by State's Exhibit 4 was not excludable from evidence, we find that the cumulative effect of informing the jury of the additional prior forgery resulted in relatively minimal additional prejudice, which, in light of other evidence showing the defendant's guilt of the charged offense, does not justify a reversal of his conviction. We decline to reverse on this issue.

### 4. Chain of Custody

■ The defendant next contends that the State failed to establish a sufficient chain of custody for State's Exhibit 1 (a photograph of Exhibit 2) and Exhibit 2 (check number 621, the subject of the charging information).

> To establish a chain of custody, the State need only present evidence that strongly suggests the exact whereabouts of the evidence at all times. The State need not provide evidence that excludes all possibility of mishap or tampering, but need provide only reasonable assurance that the evidence passed through various hands in an undisturbed condition.

*Simmons v. State* (1987), Ind., 504 N.E.2d 575, 578; *Sons v. State* (1987), Ind., 502 N.E.2d 1331, 1332. An argument by the defendant that does no more than raise the possibility of tampering with the evidence is insufficient. *Russell v. State* (1986), Ind., 489 N.E.2d 955.

■ State's witness Caroline Mullen, head cashier at Simpson's Food Fair, identified Exhibit 2 as the check that was presented to her by the defendant for cashing on May 8, 1985, and Exhibit 1 as an accurate depiction of the check before it was submitted to the chemical process of fingerprint analysis. Officer Bagbey testified that he took possession of the check from Simpson's Food Fair on May 23, 1985, and it remained in his possession until June 13, 1985, when Officer Meyer and Officer Ford took it and performed the fingerprint analysis. He received it back from Officer Ford but did not recall the specific date. The fingerprinting process caused the colors and ink on the check to run. Bagbey gave the check to Officer Meyer again on October 1, 1985, and she returned it on December 3, 1985. Bagbey testified that from the time he took possession of it on May 23, the check differed only in discoloration from the fingerprinting process and the officer's initials on the check. Bagbey also testified that Exhibit 1 was a fair and accurate depiction of Exhibit 2 at the time he recovered it from Simpson's.

There was no error in the admission of State's Exhibits 1 and 2. A sufficient chain of custody was established, and two witnesses testified that the check was in the same condition, except for the discoloration, as it was originally.

### 5. In-Court Identification

The defendant contends the in-court identification by Caroline Mullen was tainted by an impermissibly suggestive photo display procedure. On May 29, 1985, Officer Bagbey showed Mullen a group of pictures from which she chose the defendant's picture, identifying him as the individual who presented and cashed the check. Once Mullen picked the defendant's picture, Bagbey told her that the picture she selected was the man he suspected and told her the defendant's name and that his name was listed on other checks. The defendant argues that Bagbey's comments were impermissibly suggestive and through the power of suggestion reassured and reinforced her identification. He asserts that the comments tainted any subsequent identification, particularly her later in-court identification.

■ To support his proposition, the defendant cites us to cases involving police suggestions to witnesses about a certain person or that the suspect is included among those in the line-up or photo display prior to the witness identification. *See Popplewell v. State* (1978), 269 Ind. 323, 381 N.E.2d 79, and *Stacks v. State* (1978), 175 Ind.App. 525, 372 N.E.2d 1201. Reliability is the linchpin in determining the admissibility of identification testimony. The question to be determined is whether the identification procedure is so suggestive that a substantial likelihood of irreparable misidentification results. *Manson v. Brathwaite* (1977), 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140.

■ An in-court identification of an accused is impermissible when it is tainted by an unduly suggestive pre-trial confrontation unless it can be shown that a factual basis for the identification exists independent of the pre-trial confrontation. *Harris v. State* (1980), 273 Ind. 60, 403 N.E.2d 327. In evaluating the likelihood of misidentification we consider the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Hamlet v. State* (1986), Ind., 490 N.E.2d 715, 720; *Johnson v. State* (1982), Ind., 432 N.E.2d 403.

■ In-court identifications are admissible where the State can establish by clear and convincing evidence that the in-court identifications are based upon observations gained independently of any unduly suggestive pre-trial confrontations. *Johnson*, 432 N.E.2d at 405. The State bears the burden in the trial court of producing "clear and convincing evidence" of an independent basis. *Swope v. State* (1975), 263 Ind. 148, 325 N.E.2d 193, *cert. denied*, 423 U.S. 870, 96 S.Ct. 135, 46 L.Ed.2d 100. In reviewing the lower court's finding, we do not reweigh the evidence, but look to the evidence most favorable to the defendant. We accept the trial court's finding if it is supported by sufficient evidence. *Dooley v. State* (1981), Ind., 428 N.E.2d 1, 3.

■ Here, Mullen was approached on May 8, 1985, by a 6-foot white male who at that time had a beard and long hair. He presented check number 621, made payable to Guaranteed Termite Pest Service, for payment. Dewey Jacobs owned Guaranteed Termite Pest Service and had cashed checks at Simpson's for several years. When the defendant was unable to produce a driver's license as identification, he was told he would need Mr. Jacobs's driver's license. The defendant left and returned within thirty minutes with Jacobs's driver's license. He endorsed the check in the name of Mike Gray, and Mullen accepted the check and handed the man $358. Mullen had observed the defendant on two occasions in his efforts to cash the check, and she had been required to consult with the store manager about the check to determine what identification was needed before accepting it. Three weeks after the check-cashing incident, Mullen picked out the defendant's picture from a photographic display without any suggestions and without hesitation. In court she testified that May 8 was a very slack day, that it was not a routine check-cashing, that she observed the defendant on two occasions about three to four minutes each time, and

that something particular about his eyes was determinative in her identification. She also testified that she did not recall having a conversation with Bagbey or his comments to her.

Under the facts of this case, we find that the opportunities for the witness to view the defendant provided an independent basis, rendering her in-court identification admissible.

### 6. Lesser Included Offense

■ The defendant contends that the trial court erred in refusing to give his tendered instruction number 1, for the offense of check deception as a lesser included offense. He contends that check deception was a factually lesser included offense in this case.

In the appellate review of the trial court's decision whether to instruct upon lesser included offenses, we first examine the two statutes creating the alleged greater and lesser offenses and the charging information or indictment and determine whether "a conviction of the crime charged necessitates proof of all the essential elements of the lesser offense, together with the added element which makes the difference in the two offenses." *Lawrence v. State* (1978), 268 Ind. 330, 337, 375 N.E.2d 208, 212.

Here, the defendant's tendered instruction on check deception as a lesser included offense of forgery was properly refused because of the absence of the element "knowing that it will not be paid or honored by the credit institution upon presentment in the usual course of business." Ind.Code § 35–43–5–5. The defendant was charged with forgery by way of an information that stated in pertinent part:

"... did, with the intent to defraud Simp[s]on's Food Fair, utter to Caroline Mullen, a written instrument, to wit: check number 621 drawn on account number 012–836–8, of the Security Bank and Trust Company of Vincennes, Indiana, being of the following tenor: ... in such a manner that said written instrument was purported to have been made by Rev. H. Schaffer, all in violation of I.C. 35–43–5–2 ..."

He was not charged with knowing that the check would not be paid or honored by the credit institution, but only with the intent to defraud Simpson's Food Fair.

### 7. Sufficiency of Habitual Offender Evidence

During the habitual offender phase the State introduced evidence of three prior unrelated felonies, one for which the defendant contends the State failed to sufficiently establish him as the defendant and one which he contends was constitutionally invalid on its face.

■ Exhibit 22 was a compilation of certified documents from the Vanderburgh Circuit Court, Cause No. 2512, charging Michael VanWay, via a grand jury indictment, with Dealing in a Schedule III Controlled Substance, a Class B felony, on August 3, 1978. The documents included the order book entry of his plea, sentencing and commitment. Officer McCart of the Indiana State Police testified that he was the officer in charge of the investigation for the case, that he obtained the arrest warrant for the defendant, that he was involved in the booking procedure of the defendant on the charges arising out of the investigation, and that he testified before the grand jury returning the indictment. He also identified the defendant in Cause No. 2512 as the defendant in the instant case. The prosecutor also introduced evidence that Cause No. 2512 was the only case against a Michael VanWay for an offense on August 3, 1978. The evidence was sufficient to link the 1978 conviction and sentencing under Cause No. 2512 to this defendant.

The defendant contends that Exhibit 20, a two-page document consisting of the Information and an Order Book Entry reflecting the sentencing and commitment of the defendant for Second Degree Burglary in the Vanderburgh Superior Court, Cause No. 74–CR–250, upon a prior plea of guilty, was constitutionally invalid for failing to prove the defendant was represented by counsel at his guilty plea hearing.

In Indiana the general rule is that the alleged invalidity of predicate felony convictions may not be challenged during habitual offender proceedings when the prior final judgments are regular on their face. *Edwards v. State* (1985), Ind., 479 N.E.2d 541. To sustain a collateral attack on the underlying felonies alleged in a habitual offender proceeding, an appellant must demonstrate that the documents used to prove the convictions, on their face, raise a presumption that the convictions were infirm. *Lucas v. State* (1986), Ind., 499 N.E.2d 1090; *Edwards,* 479 N.E.2d at 547. Here, the defendant has failed to demonstrate that the documents on their face are constitutionally invalid.

He contends that the absence of the record of the guilty plea hearing proved the conviction was "facially invalid" and therefore susceptible to attack during the habitual offender proceeding. The mere absence of a record does not always require the vacation of a guilty plea. *Lucas,* 499 N.E.2d at 1095. Here, the record consists of a two-page document only and it does not purport to be the entire record. The defendant has not shown that the record on its face was constitutionally invalid for failure to show he was not represented by counsel at the guilty plea hearing. His arguments under *Burgett v. Texas* (1967), 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319, and *Carnley v. Cochran* (1962), 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70, are not persuasive.

### 8. *Propriety of Final Argument*

Finally, the defendant contends that comments made by the prosecutor during closing arguments, both at the guilt phase and the habitual offender phase, amounted to prosecutorial misconduct warranting a reversal for failure of the trial court to grant his motion for mistrial.

The granting of a mistrial lies within the sound discretion of the trial judge. His determinations will be reversed only where an abuse of that discretion can be established. If the jury is admonished by the trial court to disregard what has occurred at trial or if reasonable curative measures are taken, no reversible error will ordinarily be found. *Holland v. State* (1983), Ind., 454 N.E.2d 409; *Ramos v. State* (1982), Ind., 433 N.E.2d 757.

The defendant objected to certain prosecutorial remarks during closing arguments, which objections were promptly sustained by the trial court and the jury admonished to disregard. The defendant on both occasions moved for mistrial, which was denied by the trial court. An admonition is ordinarily presumed to cure the error, if in fact any occurred. *Page v. State* (1980), 274 Ind. 264, 410 N.E.2d 1304.

The questioned remarks occurred in the final arguments by the State in the initial guilt phase and in the habitual offender phase of the trial, and referred to the probability of other forgeries by the defendant. In both instances, the trial court promptly sustained a defense objection and provided an immediate, thorough, and effective admonition to the jury, which we find was sufficient to prevent any resulting harm.

### Conclusion

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and PIVARNIK, JJ., concur.