919 A.2d 49

Garrison THOMAS

v.

STATE of Maryland.

No. 59, Sept. Term, 2006.

Court of Appeals of Maryland.

March 16, 2007.

558

Nancy S. Forster, Public Defender, Baltimore, for petitioner.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for respondent.

Argued before BELL, C.J., RAKER, WILNER *, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

RAKER, J.

In this murder and robbery case, we revisit the question of whether petitioner's refusal to provide a blood sample demanded by police pursuant to a search warrant was admissible in evidence as consciousness of guilt. *See Thomas v. State,* 372 Md. 342, 812 A.2d 1050 (2002) (*Thomas I* ). We must also decide whether the Circuit Court for Charles County erred in admitting into evidence a statement petitioner made to an F.B.I. agent which was not disclosed to petitioner until one week before trial. We shall affirm.

## I.

Petitioner's convictions stem from the March 1995 murder of Beverly Renee Mitchell. In June 1999, petitioner was tried and convicted in the Circuit Court for Charles County of felony murder, second degree murder, and robbery. The Court of Special Appeals affirmed the judgment in an unre-

---

* Wilner, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he participated also in the decision and adoption of this opinion.

ported opinion. We granted Thomas' petition for a writ of certiorari and reversed, finding that, based on the evidence before the Circuit Court, it was reversible error to admit testimony regarding petitioner's refusal to submit to blood testing to show consciousness of guilt where the State failed to lay the proper evidentiary foundation for the admission of such evidence. *Id.* at 349, 812 A.2d at 1054. In a new trial, the State offered the evidence of petitioner's refusal to provide a blood sample to the police as evidence of consciousness of guilt, and he was convicted again of felony murder, second degree murder, and robbery.

On March 23, 1995, a passerby discovered Beverly Mitchell's body in an area of Charles County known as Locust Hill. The police collected physical evidence from the location where the body was found. The medical examiner ruled that the cause of death was homicide, and the manner was strangulation and blunt force injuries to the head.

Beverly Mitchell was last seen at the home of James and Ann Porter on the evening of March 22, 1995. She had gone there because her mother, Marva Mitchell, had asked her to deliver some money to her brother-in-law, Mr. Porter. Beverly Mitchell left her mother's house around 9:00 p.m. that evening and arrived at the Porter home shortly thereafter. She gave Mr. Porter ten dollars and left. Earlier in the day, Marva Mitchell had stopped at the Porter residence and informed Mr. Porter that her daughter would be dropping off the money. Petitioner, who lived in the basement of the Porter home, was present during the conversation between Marva Mitchell and Mr. Porter.

On March 24, 1995, the police discovered Beverly Mitchell's white Mitsubishi Eclipse on the 1100 block of 10th Street in Southeast Washington, D.C. That same day, police located a witness, Novella Lee Harris. Ms. Harris told police that around 3:00 a.m. on March 23, 1995, petitioner knocked on her door. At the time, he was dressed as a woman, wearing a wig, high heels, and make-up. He identified himself as "Cookie." Ms. Harris later identified petitioner as "Cookie" from a set of

seven photographs provided by the police. Ms. Harris told police that petitioner arrived in Ms. Mitchell's white Mitsubishi Eclipse, and that after his arrival, she, petitioner, and another individual purchased and smoked crack cocaine.

At trial, Ms. Harris testified that while at her home, petitioner appeared to be nervous about the car and told her various stories explaining how he had obtained the vehicle. She stated that, subsequent to his arrival, petitioner had attempted to wipe any fingerprints off the vehicle and later moved the car to the location where it was discovered by police. M s. Harris testified that she saw petitioner purchase gasoline and attempt to set the vehicle on fire, and that petitioner discarded the car keys in two different locations. When police discovered the car, it was partially burned inside. They found the keys to the car in the locations described by Ms. Harris.

Despite Ms. Harris' statements to police, the investigation of Ms. Mitchell's murder stalled until 1998. It was then that Detective Shane Knowlan of the Charles County Sheriff's Department contacted the Washington, D.C. "Cold Case Homicide Unit." The police secured a search and seizure warrant to search petitioner's home and take samples of his hair, blood, and saliva.

In June 1998, F.B.I. agents and police officers from both Charles County and Washington, D.C. executed the search warrant. Pursuant to the warrant, petitioner was transported to a police station in the District of Columbia. Detective Knowlan explained the search warrant to petitioner and told him that it was "in reference to Beverly Mitchell's death." Detective Knowlan informed petitioner that the search warrant required him to give hair, blood, and saliva samples, and that "[v]oluntary would be my choice, but we would have to take them forcibly if not." Petitioner resisted the taking of his blood nonetheless, and police restrained him to enable a forensic nurse to draw blood. Following this initial restraint, petitioner cooperated with officers in providing hair and saliva

samples. He also allowed police to draw a second sample of blood.[1]

On December 16, 1998, F.B.I. Agent Bradley Purscell[2] and several other law enforcement officials arrested petitioner for the murder of Ms. Mitchell. In a search incident to arrest, the police seized from petitioner a Washington, D.C. Driver's License which identified petitioner's gender as female. Following his arrest, while petitioner and Agent Purscell were walking down the hall at police headquarters, petitioner asked Purscell if he had "found Jesus" and if he was a Christian. After Agent Purscell responded affirmatively, petitioner stated "God has forgiven me."[3]

At petitioner's second trial, the prosecutor advised the trial court that he learned of the existence of the "God has forgiven me" statement one week before trial, in a telephone conversation he had with Agent Purscell.[4] The same day the prosecutor learned of the statement, he called defense counsel and informed her of the information. Defense counsel made no effort to interview Agent Purscell.

---

1. DNA testing of the samples taken from petitioner excluded him as a match to tissue samples found under Ms. Mitchell's fingernails. In addition, none of petitioner's hair samples matched those found inside Ms. Mitchell's car and petitioner was excluded as a source of blood found on Ms. Mitchell's hands. Further tests of the blood on Ms. Mitchell's hands did not exclude her as the source of the blood.

2. At the time, Agent Purscell was assigned to the Washington, D.C. Cold Case Unit.

3. At the motions hearing, Agent Purscell testified that he in turn responded to petitioner: "That's nice because the State of Maryland hasn't." The trial judge did not allow this portion of Agent Purscell's testimony to be repeated at trial.

4. Agent Purscell had called the State's Attorney's office in response to a subpoena he had received because he wanted to find out if he was needed for trial. Agent Purscell had been subpoenaed because he was involved in the chain of custody on the vacuum fibers. As there had been no prior knowledge of any statement by petitioner to Agent Purscell, the subpoena was unrelated to the "God has forgiven me" statement. There is no suggestion in this record that the State's Attorney's Office acted in bad faith.

On the day of trial, prior to jury selection, petitioner moved *in limine,* asking the Circuit Court to exclude the "God has forgiven me" statement on the grounds that the State had violated the Maryland Rules o f Discovery in that it disclosed Agent Purscell's statement in an untimely manner, in violation of Maryland Rule 4–263. The sole relief requested by petitioner was the exclusion of the evidence.

The Circuit Court found there was no discovery violation and denied the motion *in limine.* The judge stated as follows:

"Based on these circumstances and what I've heard, I do not find there's a discovery violation. There's no indication that this statement was known to the State prior to a week ago. There's no bad faith on the part of the State. So, as far as that goes, I find that the State promptly reported to defense counsel its intent to use the statement by the Defendant.

The statement certainly is relevant. As the Defendant's being taken down the hall upon being arrested for murder, he initiates a conversation with Agent Purscell and in that context, states that God has forgiven me. I believe that it is relevant and that statement will be allow ed."

Petitioner asked the court to suppress Detective Knowlan's testimony regarding the drawing of the blood. He argued that Detective Knowlan's testimony was irrelevant and at best ambiguous, and not admissible as evidence of consciousness of guilt. In addition, he argued that, because the DNA test results of the blood excluded petitioner, the prejudicial effect substantially outweighed the probative value of the evidence. The court reserved ruling until trial to determine whether the State satisfied the evidentiary foundation for the admission of the evidence. At trial, after the detective testified that he told Thomas that "this was in reference to Beverly Mitchell's death," the court ruled that the evidence was admissible.

The jury found petitioner guilty of first degree felony murder, second degree specific intent murder, and robbery. The court imposed a life sentence.

Petitioner noted a timely appeal to the Court of Special Appeals. The intermediate appellate court affirmed, holding that because Agent Purscell was an F.B.I. Agent who did not "regularly report" to the State's Attorney, petitioner's statement to him did not fall within the State's disclosure obligation. *Thomas v. State,* 168 Md.App. 682, 695, 899 A.2d 170, 178 (2006). The Court of Special Appeals also held that it was not error to allow the jury to consider petitioner's resistance to the drawing of his blood as evidence of consciousness of guilt. *Id.* at 713, 899 A.2d at 188–89.

We granted petitioner's request for a writ of certiorari to address the following questions:

"I. Did the Court of Special Appeals err in finding that the F.B.I. agent who arrested and booked Mr. Thomas was not a 'state agent' for purposes of Maryland Rule 4–263 and, therefore, there was no discovery violation when, one week before the retrial in a nine year old murder case, the state revealed for the first time that Mr. Thomas had, as the prosecutor argued in closing, 'confessed' to the F.B.I. agent at the time of his arrest?

II. Does the fact that Mr. Thomas initially resisted police efforts to obtain blood, the testing of which ultimately excluded Mr. Thomas, constitute evidence of a consciousness of guilt when the initial resistance occurred three years after the victim's murder, while Mr. Thomas was handcuffed in a police interrogation room, was surrounded by four police officers, had no reason to believe that his blood would be drawn by someone skilled in doing so, and, after calming down, submitted to the removal of pubic hairs, saliva and a second vial of blood?"

*Thomas v. State,* 394 Md. 479, 906 A.2d 942 (2006).

## II.

We turn first to petitioner's argument that the Court of Special Appeals erred in finding that the F.B.I. agent who arrested and booked him was not a "State agent" for purposes of Maryland Rule 4–263 and, therefore determined that there

was no discovery violation. Petitioner maintains that the State violated the Maryland Rules of Discovery because it failed to timely disclose the "God has forgiven me" statement to the defense. He argues that even though Agent Purscell was a federal agent, his role in this case made him a State agent for the purposes of Rule 4–263. As such, he continues, the State had an affirmative duty to discover whether Agent Purscell knew of any statements petitioner may have made. Because the State failed to learn of such information until a week before the second trial, it violated the requirement to disclose any statement made by the defendant within the mandatory time for discovery.

The State responds that the Circuit Court denied the motion correctly to exclude Agent Purscell's testimony. The State argues that Agent Purscell did not qualify as a State agent under Rule 4–263 because he did not report regularly to the office of the State's Attorney. Alternatively, the State maintains that even if there was a discovery violation, exclusion of Agent Purscell's testimony would be inappropriate. Disclosure of Purscell's statement was made more than a week before trial, thus giving petitioner reasonable time to respond to the newly discovered evidence.

■ Maryland Rule 4–263 governs discovery in criminal cases in the circuit courts. One purpose of the Rule is to assist the defendant in preparing a defense and to protect the defendant from surprise. *Williams v. State,* 364 Md. 160, 174, 771 A.2d 1082, 1090 (2001). Another purpose is to force a defendant to file timely motions to suppress evidence. *Bailey v. State,* 303 Md. 650, 655, 496 A.2d 665, 667 (1985).

Rule 4–263(a)(2)(B) provides that the State's Attorney shall disclose, *without request, inter alia,* "[a]ny relevant material or information regarding ... the acquisition of statements made by the defendant to a State agent that the State intends to use at a hearing or trial."[5] Rule 4–263(b) provides, in

---

**5.** The relevant information that was disclosed in this case does not fall within Maryland Rule 4–263(a)(1), material or information tending to

pertinent part, that the State shall disclose, *upon request,* the following information:

"(1) Witnesses. Disclose to the defendant the name and address of each person then known whom the State intends to call as a witness at the hearing or trial to prove its case in chief or to rebut alibi testimony;

(2) Statements of the defendant. As to ₐₗₗ statements made by the defendant to a State agent that the State intends to use at a hearing or trial, furnish to the defendant, but not file unless the court so orders: (A) a copy of each written or recorded statement, and (B) the substance of each oral statement and a copy of all reports of each oral statement."

The State's Attorney must provide mandatory disclosures without request "within 25 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 4–213." Rule 4–263(e). The State's Attorney must provide discovery upon request "within 15 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 4–213." Rule 4–263(e).

Rule 4–263(g) addresses the discovery obligations of the State's Attorney. The Rule provides as follows:

"The obligations of the State's Attorney under this Rule extend to material and information in the possession or control of the State's Attorney and staff members and any others who have participated in the investigation or evaluation of the action and who either regularly report, or with reference to the particular action have reported, to the office of the State's Attorney."

In *Bailey v. State,* 303 Md. 650, 496 A.2d 665, we discussed the meaning and scope of the term "State agent" as used in the Rule 741, the predecessor to the present criminal discov-

---

negate the guilt or punishment of the defendant as to the offense charged. Nor does the information fall under the obligations covered by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

ery rule.[6] We concluded that "State agent" should not be read more narrowly than the Rule provision applying to "any others who have participated in the investigation ... and who with reference to the particular case have reported to [the State's Attorney's] office." Id. at 655–56, 496 A.2d at 667. We explained that one of the underlying purposes of the Rule, to require timely motions to suppress, would be "defeated where agents of a sovereign, other than Maryland, have been involved in investigating the case." Id. at 656, 496 A.2d at 668.

The Court of Special Appeals, in this case, held that F.B.I. Agent Purscell "clearly did not 'regularly report' to the State's Attorney's office" and did not report with reference to this case until he contacted that office shortly before the pretrial hearing. *Thomas,* 168 Md.App. at 695, 899 A.2d at 178. Ordinarily, the obligation to not only provide discovery, but to impute information within the knowledge of a State agent to the State's Attorney, does not apply to federal agents because they do not usually participate in the investigation or evaluation of the action and do not either regularly report, or with reference to the particular action, actually report to the office of the State's Attorney. In the instant case, however, we do not think it is *so clear* that Agent Purscell should not be considered a State agent. He participated in the investigation as a member of the Washington, D.C. Cold Case Unit, he arrested petitioner, and he wrote a report in the matter. Although we have stated repeatedly that Rule 4–263 should be interpreted liberally in favor of disclosure, nonetheless, we need not decide here whether Agent Purscell was a State agent under the Rule, because even if he was, we agree with the trial judge that petitioner was not prejudiced by the State's disclosure of the statement later than the Rule mandates but prior to trial.

---

**6.** As we have noted, our earlier interpretations of terms in Rule 741 are relevant to interpretations of similar terms in Rule 2–463. *See Williams v. State,* 364 Md. 160, 171 n. 13, 771 A.2d 1082, 1088 n. 13 (2001).

 To implement the objectives of the Rule, it is within the discretion of the trial court to impose sanctions if the Rule is violated. *Thompson v. State*, 395 Md. 240, 258, 909 A.2d 1035, 1046 (2006). Rule 4–263(i) states, in pertinent part, as follows:

"If at any time during the proceedings the court finds that a party has failed to comply with this Rule or an order issued pursuant to this Rule, the court may order that party to permit the discovery of the matters not previously disclosed, strike the testimony to which the undisclosed matter relates, grant a reasonable continuance, prohibit the party from introducing in evidence the matter not disclosed, grant a mistrial, or enter any other order appropriate under the circumstances." [7]

The Rule, on its face, does not require the court to take any action; it merely authorizes the court to act. Therefore, the presiding judge has the discretion to select an appropriate sanction, but also has the discretion to decide whether any sanction is at all necessary. *Evans v. State*, 304 Md. 487, 500, 499 A.2d 1261, 1268 (1985).

 In exercising its discretion regarding sanctions for discovery violations, a trial court should consider: (1) the reasons why the disclosure was not made; [8] (2) the existence

---

**7.** The available sanctions under the Maryland Rule are consistent with the discovery sanctions set out by the American Bar Association. *See* ABA STANDARDS FOR CRIMINAL JUSTICE: DISCOVERY AND TRIAL BY JURY (3d ed.1996) (hereinafter ABA Criminal Justice Standards). Standard 11–7.1(a) of the ABA Criminal Justice Standards provides as follows:
"(a) If an applicable discovery rule or an order issued pursuant thereto is not promptly implemented, the court should do one or more of the following:
(i) order the noncomplying party to permit the discovery of the material and information not previously disclosed;
(ii) grant a continuance;
(iii)prohibit the party from calling a witness or introducing into evidence the material not disclosed, subject to the defendant's right to present a defense and provided that the exclusion does not work an injustice either to the prosecution or the defense; and/or
(iv) enter such other order as it deems just under the circumstances."

**8.** In determining a proper sanction, the court may address the reasons the State failed to conform to discovery rules. While the prosecutor's

and amount of any prejudice to the opposing party; (3) the feasability of curing any prejudice with a continuance; and (4) any other relevant circumstances. *See Taliaferro v. State,* 295 Md. 376, 390, 456 A.2d 29, 37 (1983); *United States v. Hastings,* 126 F.3d 310, 317 (4th Cir.1997). *See generally,* JOHN E. THEUMAN, *Exclusion of Evidence in State Criminal Action for Failure of Prosecution to Comply with Discovery Requirements as to Statements Made by Defendants or Other Nonexpert Witnesses, in* 33 A.L.R.4th 301 (1984).

The most accepted view of discovery sanctions is that in fashioning a sanction, the court should impose the least severe sanction that is consistent with the purpose of the discovery rules. *See e.g., Hastings,* 126 F.3d at 317; *United States v. Fernandez,* 780 F.2d 1573, 1576 (11th Cir.1986); *United States v. Sarcinelli,* 667 F.2d 5, 7 (5th Cir.1982); *People v. Dist. Ct., City and Cty. of Denver,* 808 P.2d 831, 836–37, (Colo.1991); *State v. Smith,* 123 Ariz. 243, 599 P.2d 199, 208 (1979). *See also* ABA STANDARDS FOR CRIMINAL JUSTICE: DISCOVERY AND

---

intent alone does not determine the appropriate sanction, bad faith on the part of the State can justify exclusion of evidence or serve as a factor in granting a harsher sanction. Bad faith or willful violation of the discovery rules has been held to justify exclusion of evidence. *See State v. Brisson,* 619 A.2d 1099, 1102–03 (R.I.1993). *See also* 4 WAYNE R. LAFAVE, JEROLD H. ISRAEL, & NANCY J. KING, CRIMINAL PROCEDURE § 20.6(b), p. 937 (2d ed.1999) (stating that "[p]rosecution bad faith might also justify selection of preclusion over a continuance although the latter would be equally effective (though not as convenient) in responding to a prejudicial impact"). "[W]here a pattern emerges of discovery violations by a particular person or office, the court should also consider the need to impose sanctions that will deter future violations." ABA Criminal Justice Standards, *supra* note 7, Standard 11–7.1, Commentary, p. 114. Where the violation is willful, or in bad faith, "the court should consider sanctioning the lawyer individually in addition to any sanctions imposed under this section." *Id. See also State v. Deleon,* 143 Md.App. 645, 663 n. 4, 795 A.2d 776, 786 n. 4 (2002) (observing that "[o]ther remedies besides dismissal, such as a contempt of court or attorney disciplinary proceedings, allow the court to focus on the behavior of the prosecutor instead of granting a windfall to an unprejudiced defendant").

On the other hand, even where the prosecutor acts in good faith, and an unintentional violation of the Rule results, the error may require a mistrial if it has irreparably prejudiced a defendant. *Evans v. State,* 304 Md. 487, 501, 499 A.2d 1261, 1268 (1985).

TRIAL BY JURY, Standard 11–7.1, Commentary, p. 114 (3d ed.1996) (hereinafter ABA Criminal Justice Standards).

Assuming *arguendo* that the State violated the discovery obligations under the rules because the State did not learn of the existence of the statement until a week before trial and therefore did not disclose it earlier, the proper focus and inquiry is whether petitioner was prejudiced, and if so, whether he was entitled to have the evidence excluded. *Williams,* 364 Md. at 178, 771 A.2d at 1092 (stating that the trial court's evaluation of a discovery violation necessarily includes determining whether the violation has caused prejudice).

In assessing prejudice, the facts are significant. The State notified defense counsel immediately upon learning of Agent Purscell's conversation with petitioner after the arrest. There is no suggestion or allegation here of bad faith on the part of the prosecutor.[9] Petitioner received this notice a week prior to trial, affording defense counsel an opportunity to interview the witness and to prepare for cross-examination. Significantly, petitioner requested only that the trial court exclude the evidence. He was not interested in a continuance nor an opportunity to talk to Agent Purscell. As we have indicated, even if the State violates Rule 4–263, the question of whether any sanction is to be imposed is committed to the discretion of the trial judge. We hold that the trial judge did not abuse his discretion in admitting the challenged evidence at trial. Petitioner was not prejudiced in any way and there was no bad faith on the part of the State.

Exclusion of evidence for a discovery violation is not a favored sanction and is one of the most drastic measures that can be imposed. *See e.g., State v. Tascarella,* 580 So.2d 154, 157 (Fla.1991); *People v. Rubino,* 305 Ill.App.3d 85, 238

---

9. It is important to our decision that there is not the slightest suggestion in this case that the State acted in bad faith. It is also not disputed in this case that the State's Attorney nor anyone in that office was aware of the statement in question until the day it was disclosed to defense counsel and that the prosecutor disclosed the statement to defense counsel immediately upon learning of its existence.

Ill.Dec. 342, 711 N.E.2d 445, 448–449 (1999). *See* also 4 WAYNE R. LAFAVE, JEROLD H. ISRAEL, & NANCY J. KING, CRIMINAL PROCEDURE § 20.6(b), p. 935 (2d ed.1999) (stating that "appellate courts frequently warn against the unnecessary use of the preclusion sanction"); THEUMAN, *supra* at § 2[a], p. 307 (stating that "[b]arring the admission of undisclosed evidence at trial is one of the most drastic sanctions available to the trial court, and the courts may be reluctant to exclude otherwise probative evidence on such grounds"). Although the exclusion of evidence is authorized under Rule 4–263, Rule 16 of the Federal Rules of Evidence, and most State court rules, as well as the ABA Criminal Justice Standards, because the exclusion of prosecution evidence as a discovery sanction may result in a windfall to the defense, exclusion of evidence should be ordered only in extreme cases. *See United States v. Rodriguez,* 765 F.2d 1546, 1557 (11th Cir.1985); *People v. Jenkins,* 98 N.Y.2d 280, 746 N.Y.S.2d 651, 774 N.E.2d 716, 719 (2002); *State v. Respass,* 256 Conn. 164, 770 A.2d 471, 487 (2001); *Reid v. State,* 267 Ind. 555, 372 N.E.2d 1149, 1155 (1978); *State v. Jones,* 209 Kan. 526, 498 P.2d 65, 69 (1972). *See also* ABA Criminal Justice Standards, *supra,* Standard 11–7.1, Commentary, p. 112 (noting that "the exclusion of prosecution evidence as a discovery sanction may result in a windfall for the defense"). Where remedial measures are warranted, a continuance is most often the appropriate remedy. *See United States v. Euceda–Hernandez,* 768 F.2d 1307, 1312 (11th Cir.1985); *Vanway v. State,* 541 N.E.2d 523, 527 (Ind.1989). *See also,* 2 NANCY HOLLANDER, BARBARA E. BERGMAN, & MELISSA STEPHENSON, WHARTON'S CRIMINAL PROCEDURE § 12:18, p. 12–184 to 12–185 (14th ed.2006) (noting that in determining sanctions, after the court has considered any prejudice from the violation, it should determine "the feasibility of curing the prejudice with a continuance"); CRIMINAL PROCEDURE, *supra* at § 20.6(b), p. 934 (noting that the "likely prejudice here ordinarily flows from the defense lacking sufficient time to digest and prepare either to meet or to use the previously undisclosed evidence ... [and that] the preferred remedy, at least where the prosecution has acted in good faith,

is to order immediate compliance with discovery requirements, and offer the defense a continuance").

Assuming, without deciding, that the State violated Rule 4–263 by failing to disclose Agent Purcell's information earlier, petitioner's claim lacks merit because he has not demonstrated that he suffered any prejudice from the delay in receiving the information. Defense counsel's only argument as to prejudice is that the State's case was primarily a circumstantial evidence case and that petitioner's remark that "God has forgiven me" must have contributed to the jury's guilty verdict, and was therefore not harmless error. That is not the type of prejudice contemplated by the prejudice requirement for a Rule 4–263 sanction. Petitioner has failed to demonstrate any prejudice he has suffered as a result of the delay in disclosure. "Instead of addressing what prejudice, if any, [defendant] suffered, defense counsel simply elected to challenge the remedy that the district court proposed." *United States v. De La Rosa*, 196 F.3d 712, 716 (7th Cir.1999). Under Rule 4–263, a defendant is prejudiced only when he is unduly surprised and lacks adequate opportunity to prepare a defense, or when the violation substantially influences the jury. The prejudice that is contemplated is the harm resulting from the nondisclosure. *See* ABA Criminal Justice Standards, *supra*, Standard 11–7.1, Commentary, p. 110–11.

The Court of Special Appeals addressed discovery violation sanctions cogently in *Jones v. State*, 132 Md.App. 657, 753 A.2d 587 (2000). Judge Charles E. Moylan, Jr., writing for a unanimous panel, discussed the notion of appropriate sanctions versus windfalls, stating as follows:

"In *Ross v. State*, 78 Md.App. 275, 286, 552 A.2d 1345 (1989), we discussed this subject of appropriate sanctions versus windfalls:

'Assuming that they should have been discovered pretrial, the appellant yearns for a sanction which is excessive. The discovery law is not an obstacle course that will yield a defendant the windfall of exclusion every time the State fails to negotiate one of the hurdles. Its salutary purpose

is to prevent a defendant from being surprised. Its intention is to give a defendant the necessary time to prepare a full and adequate defense.'

Although the purpose of discovery is to prevent a defendant from being surprised and to give a defendant sufficient time to prepare a defense, defense counsel frequently forego requesting the limited remedy that would serve those purposes because those purposes are not really what the defense hopes to achieve. The defense, opportunistically, would rather exploit the State's error and gamble for a greater windfall. As Chief Judge Gilbert explained for this Court in *Moore v. State*, 84 Md.App. 165, 176, 578 A.2d 304 (1990), however, the 'double or nothing' gamble almost always yields 'nothing.' "

*Jones*, 132 Md.App. at 678, 753 A.2d at 598–99. As in the *Jones* case, where the defendant did not ask for a continuance, in the instant case, petitioner did not ask for a continuance because he did not need one; he simply sought the windfall of exclusion.

### III.

■■■ As he did in *Thomas I*, petitioner argues that the State did not establish the necessary foundation to admit evidence of his refusal to submit to blood testing to establish consciousness of guilt. In *Thomas I*, we explained consciousness of guilt evidence as follows:

"A person's behavior after the commission of a crime may be admissible as circumstantial evidence from which guilt may be inferred. This category of circumstantial evidence is referred to as 'consciousness of guilt.' We observed in *Snyder v. State*, 361 Md. 580, 591, 762 A.2d 125, 131 (2000), that '[i]f relevant, circumstantial evidence regarding a defendant's conduct may be admissible under Md. Rule 5–403, not as conclusive evidence of guilt, but as a circumstance tending to show a consciousness of guilt.' Conduct typically argued to show consciousness of guilt includes flight after a crime, escape from confinement, use of a false name, and destruction or concealment of evidence.

A person's post-crime behavior often is considered relevant to the question of guilt because the particular behavior provides clues to the person's state of mind. The reason why a person's post-crime state of mind may be relevant is because, as Professor Wigmore suggested, the commission of a crime can be expected to leave some mental traces on the criminal."

*Thomas I,* 372 Md. at 351–52, 812 A.2d at 1055–56 (some internal citations omitted).

In *Thomas I,* we set out the evidentiary foundation which the State was required to satisfy in order to admit evidence of petitioner's consciousness of guilt. We stated as follows:

"The relevance of the evidence as circumstantial evidence of petitioner's guilt depends on whether the following four inferences can be drawn: (1) from his resistance to the blood test, a desire to conceal evidence; (2) from a desire to conceal evidence, a consciousness of guilt; (3) from a consciousness of guilt, a consciousness of guilt of the murder of Ms. Mitchell; and (4) from a consciousness of guilt of the murder of Ms. Mitchell, actual guilt of the murder."

*Id.* at 356, 812 A.2d at 1058. The third of these inferences was lacking in petitioner's initial trial. There was no evidence in the record that petitioner was aware that the blood test he resisted was connected to the murder of Ms. Mitchell. *Id.* at 356–57, 812 A.2d at 1058. We concluded that absent such evidence, the jury could not have drawn an inference that petitioner's resistance was connected to a consciousness of guilt of the crime charged. *Id.* at 358, 812 A.2d at 1059.

In the second trial, the State offered evidence sufficient to satisfy the third inference necessary to demonstrate *consciousness of guilt.* Detective Knowlan testified that he told petitioner the warrant and blood test were "in reference to Beverly Mitchell's death." Knowlan's testimony provided a reasonable basis for the jury to find that petitioner was aware that the police wanted his blood sample in connection to the

investigation of the murder of Ms. Mitchell.[10] We hold that in petitioner's second trial there was a sufficient foundation for the admission of the evidence. The evidence was relevant. As the Court of Special Appeals gleaned from our opinion in *Thomas I*:

> "To be relevant, it is not necessary that evidence of this nature conclusively establish guilt. The proper inquiry is whether the evidence *could* support an inference that the defendant's conduct demonstrates a consciousness of guilt. If so, the evidence is relevant and generally admissible."

*Thomas*, 168 Md.App. at 712, 899 A.2d at 188 (emphasis in original) (internal citations omitted).

Despite Detective Knowlan's expanded testimony, petitioner argues that the trial court should still have found the consciousness of guilt evidence inadmissible. His argument rests primarily on the first inference we noted in *Thomas I*: "from his resistance to the blood test, a desire to conceal evidence." Petitioner claims that numerous other factors could have explained his reluctance to submit to the testing. He states that his reaction "would be the universal response" of anyone taken to a police interrogation room and told they would be required to provide a blood sample. Further, he posits that his reaction could have been due to religious objections or fear of needles, the sight of blood, pain, or possible infection. We find these arguments unconvincing.

We agree with the explication of the Court of Special Appeals, which stated as follows:

> "Federal courts have also held that resistance to police requests for evidence could support an inference of consciousness of guilt. *See United States v. Jackson*, 886 F.2d 838, 846 (7th Cir.1989) (stating that 'evidence of the defendant's refusal to furnish writing exemplars, like evidence of flight and concealment, is probative of consciousness of

---

10. As we noted in *Thomas I*, Detective Knowlan could have "testified that petitioner was advised that the evidence sought was in connection with the Mitchell murder." *Thomas I*, 372 Md. at 357 n. 5, 812 A.2d at 1059 n. 5. He simply did not do so in the original trial.

guilt'); *United States v. Terry,* 702 F.2d 299, 313–14 (2d Cir.1983) (holding that evidence that defendants refused to permit investigators to obtain palm prints was admissible to show consciousness of guilt). Appellant courts in sister states have held that evidence of the refusal to provide a blood sample is admissible to support an inference of consciousness of guilt. [*People v. Farnam,* 28 Cal.4th 107, 121 Cal.Rptr.2d 106, 47 P.3d 988, 1022 (2002) ] (stating that evidence that the defendant initially resisted providing blood and hair samples, despite a court order that he do so, was admissible to show consciousness of guilt); [*People v. Edwards,* 241 Ill.App.3d 839, 182 Ill.Dec. 428, 609 N.E.2d 962, 966 (1993) ] (stating that 'Defendant's initial refusal to submit to blood testing has some tendency to indicate a consciousness of guilt and is therefore relevant and generally admissible')."

*Thomas,* 168 Md.App. at 710, 899 A.2d at 186–87. So long as the proper foundation is laid, consciousness of guilt evidence may be relevant and admissible.

██ Simply because there is a possibility that there exists some innocent, or alternate, explanation for the conduct does not mean that the proffered evidence is *per se* inadmissible. If it was the position of petitioner that he feared needles, or that the drawing of blood violated some religious belief he held, or any other innocent explanation for his conduct, it was incumbent upon him to generate that issue. He had the opportunity at trial to offer alternative theories explaining his resistance to the blood test, and the record is completely devoid of any such evidence. *See* 2 JAMES H. CHADBOURN, WIGMORE ON EVIDENCE § 276(e), p. 130 (Chadbourn rev.1979) (stating that "the accused may always endeavor to destroy the adverse significance of his conduct by facts which indicate it to be equally or more consistent with such other hypothesis than that of a consciousness of guilt"). The State is not required to anticipate any or all conceivable innocent explanations for a party's refusal to submit to a blood test, and its failure to do so is not a basis to exclude the evidence. *See id.* at § 276(b), p. 129 (stating that the "prosecution cannot be expected to

negative beforehand all conceivable innocent explanations [for consciousness of guilt]").

Petitioner argues that even if the evidence is relevant and admissible, the prejudicial effect of the evidence outweighed its probative value, and therefore, the evidence should have been excluded. We disagree.

The admission of evidence is committed to the sound discretion of the trial court and will not be reversed unless there is a clear abuse of discretion. *Kelly v. State,* 392 Md. 511, 530, 898 A.2d 419, 430 (2006); *Merzbacher v. State,* 346 Md. 391, 404–05, 697 A.2d 432, 439 (1997). We stated in *Merzbacher v. State,* as follows:

"At the outset, we note that the admission of evidence is committed to the considerable and sound discretion of the trial court. In that regard, all relevant evidence is generally admissible. A corollary to that rule is that irrelevant evidence is not admissible. To be relevant, evidence must tend to establish or refute a fact at issue in the case. Once a finding of relevancy has been made, we are generally loath to reverse a trial court unless the evidence is plainly inadmissible under a specific rule or principle of law or there is a clear showing of an abuse of discretion.

Nonetheless, as we said in *Williams [v. State,* 342 Md. 724, 737, 679 A.2d 1106, 1113 (1996) overruled on other grounds, *Wengert v. State,* 364 Md. 76, 89 n. 4, 771 A.2d 389, 396 n. 4 (2001) ]:

'[a] finding by the trial judge that a particular piece of evidence is relevant, however, does not mean that evidence is *automatically* admissible. Even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. As with the trial court's relevancy determination, a decision to admit relevant evidence over an objection that the evidence is unfairly prejudicial will not be reversed absent an abuse of discretion.' "

*Merzbacher,* 346 Md. at 404–05, 697 A.2d at 439 (emphasis in original) (some internal citations omitted). The trial judge

considered the evidence and ruled it admissible. We agree with the Court of Special Appeals conclusion that "any possible prejudicial effect of appellant's struggle to avoid the drawing of blood did not so clearly outweigh the probative value of the evidence so as to render the circuit court's admission of the evidence an abuse of discretion." *Thomas*, 168 Md.App. at 713, 899 A.2d at 189. We find no error.

***JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.***