994 A.2d 454

**In re CAITLIN N.**

**No. 1604 Sept.Term, 2008.**

Court of Special Appeals of Maryland.

May 3, 2010.

254

Celia Anderson Davis (Nancy S. Forster, Public Defender, on the brief), Baltimore, MD, for Appellant.

Susannah E. Prucka (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: HOLLANDER, WOODWARD and KEHOE, JJ.

WOODWARD, Judge.

On April 22, 2008, an intake officer with the Department of Juvenile Services (the "Department"), filed a Petition for Continued Detention or Shelter Care concerning appellant, Caitlin N., in the Circuit Court for Talbot County, Maryland, sitting as a juvenile court, alleging that appellant may be a delinquent child. Following a hearing, the juvenile court granted the Department's petition for continued detention or shelter care and ordered that appellant remain in the care and custody of the Department. On May 7, 2008, appellant was

conditionally released from detention, with electronic monitoring, into the custody of her mother, Suzanne N.

On May 13, 2008, the State filed a juvenile petition, alleging that appellant was a delinquent child for having attempted to possess marijuana. The juvenile court held an adjudicatory hearing on the State's petition on June 26, 2008, and found appellant involved in the delinquent act of attempted possession of marijuana. At the disposition hearing on July 17, 2008, the juvenile court held that appellant was a delinquent child, placed her in the custody of her older sister, Sara M., and also placed her on supervised probation under the supervision of the Department. Appellant timely appealed to this Court and presents the following three questions for our review:

1. Did the court below err in denying Appellant's "Motion to Hold Adjudicatory Hearing within Sixty Days?"

2. Did the juvenile court err in ruling that the State was not required to provide the name of the chemist in discovery?

3. Was the evidence legally insufficient to sustain the finding that Appellant was involved in the delinquent act of attempted possession of marijuana?

For the following reasons, we shall affirm the judgment of the juvenile court.

## BACKGROUND

On April 20, 2008, Patrolman First Class ("PFC") George T. Larrimore, Jr., of the Easton Police Department, observed appellant with a group of other individuals at approximately 10:03 p.m. in the area of 12 North Washington Street in Easton, Maryland. During the course of his observations, PFC Larrimore heard appellant ask one Brandon Sinclair, "hey do you have any weed?" and "you should let me buy a gram from you. Will you let me buy a gram?" Appellant was then seen retrieving something from her pocketbook and attempting to hand it to Sinclair. Appellant and Sinclair were taken into custody and police recovered 1.8 grams of marijuana from Sinclair's person during a search incident to arrest.

On April 21, 2008, appellant was placed in emergency detention at the Waxter Children's Center. The next day, April 22, 2008, the Department filed a Petition for Continued Detention or Shelter Care in the juvenile court pending the possible filing of a juvenile petition. Following a hearing the same day, wherein the Department proffered the underlying bases for its petition, including that appellant attempted to possess a controlled dangerous substance, the juvenile court granted the Department's petition for continued detention at Waxter Children's Center or other secure detention facility. The court found that continued detention was necessary in order to "protect the child or the person and property of others," and because "there appears to be no parent, guardian, custodian or other person able to provide supervision and care for the child and return the child to Court when required." The juvenile court additionally found that appellant "has been [a] habitual runaway, has been implicated in substance abuse, and her mother is currently out of state [until] the weekend, thus there is no supervision and considerable concern for her safety if released[.]" Appellant then was ordered into the care and custody of the Department.

That detention continued until May 7, 2008, when appellant was conditionally released with electronic monitoring to the custody of her mother. The juvenile court's order provided as follows:

Upon the matters presented before the Court in Hearing on the Petition of the State of Maryland, Department of Juvenile Services, for continued detention of [appellant] alleged to be a delinquent child, the Court finds that there is no parent, guardian, custodian or other person able to provide adequate supervision and care of and to the Respondent to the Court when required, without the assistance of electronic monitoring and compliance by respondent with the terms and conditions of a Conditional Release, but that with such monitoring and compliance, such supervision, care and return to Court can be provided by [ ] [appellant's] mother.

Following appellant's conditional release, on May 13, 2008, the State of Maryland filed a juvenile petition alleging that appellant was a delinquent child for having been involved with the attempted possession of marijuana, a controlled dangerous substance. The petition lists PFC Larrimore as the State's sole witness in support of the petition. The Office of the Public Defender entered an appearance in the juvenile court on behalf of appellant on May 22, 2008. The record additionally discloses that, although the petition was served on appellant's mother on May 23, 2008, an attempt to serve appellant with the petition that day was unsuccessful.

On June 10, 2008, after the State provided discovery, appellant's attorney filed a Demand for Presence of Chemist, Analyst, or Person in Chain of Custody, citing Maryland Code (1974, 2006 Repl.Vol.), § 10–1003 of the Courts and Judicial Proceedings Article ("C.J.").[1] Additionally, appellant's attorney filed a motion in the juvenile court, entitled "Motion to Hold Adjudicatory Hearing within Sixty Days." The motion requested that the adjudicatory hearing be set on or before June 20, 2008, for the following reasons:

1. On April 20, 2008 Respondent was arrested and ordered detained by an intake officer, pursuant to Maryland Code, Courts and Judicial Proceedings Article, section 3–8A–15.

2. This Honorable Court, sitting as a Juvenile Court, obtained jurisdiction of the Respondent when the State filed a petition alleging that the Respondent is a delinquent child.

3. This Honorable Court then held a hearing on April 22, 2008 on the State's petition for continued detention. At that hearing, this Court authorized continued secure detention.

---

1. That section provides, in pertinent part: "In a criminal proceeding, the prosecution shall, upon written demand of a defendant filed in the proceedings at least 5 days prior to a trial in the proceeding, require the presence of the chemist, analyst, or any person in the chain of custody as a prosecution witness." Md.Code (1974, 2006 Repl.Vol.), § 10–1003(a)(1) Cts. & Jud. Pro. Art. ("C.J.").

4. Also at this April 22nd hearing, Respondent received formal notice of the allegation contained in petition number J–08–5460.

5. Pursuant to Rule 11–114 of the Maryland Rules of Procedure, an adjudicatory hearing shall be held within 60 days after a juvenile petition is served on the respondent.

6. Respondent's scheduled adjudicatory hearing for petition number J–08–5460 is June 26, 2008, which is outside the 60–day time requirement mandated by Maryland Rule 11–114. At this time, Respondent has not waived her right to adjudication within 60 days.

On June 10, 2008, the State filed a response to this motion, stating:

1. The Petition in this case was filed on May 7, 2008 [sic].

2. The Respondent's attorney entered her appearance on May 22, 2008.

3. The Respondent has not yet been served with the Petition.

4. There was a Continued Detention Hearing on April 22, 2008.

5. Rule 11–114 of the Maryland Rules of Procedure provides that an Adjudicatory Hearing shall be held within sixty days after the juvenile Petition is served on the respondent.

6. Since the Petition has not been served, the currently scheduled date is not in violation of the sixty day time period.

On June 11, 2008, the juvenile court entered a written order denying appellant's Motion to Hold Adjudicatory Hearing within Sixty Days. Thereafter, on June 26, 2008, the adjudicatory hearing was held before the juvenile court. The record reveals that appellant was personally served with the petition at 9:00 a.m. that same day.

Prior to receiving evidence at the hearing, appellant's counsel renewed the motion to hold the adjudicatory hearing

within sixty days. Appellant contended that, because the juvenile court had jurisdiction over appellant at the April 22, 2008 detention hearing, the adjudicatory hearing should have been held on June 20, 2008, and that there was no extraordinary cause to hold the hearing on June 26, 2008. Specifically, counsel stated, "without the extraordinary cause finding I don't believe that we can go forward today." The State responded that the sixty day time period of Rule 11–114 did not begin to run until the petition was served. The State also argued that "[a] continued detention hearing after the juvenile is arrested is not considered filing a petition. It's not considered a notice of the charges because the charges are not filed until the State's Attorney's Office signs the petition and files it with the Court."

After the juvenile court confirmed that appellant actually was served with the petition the day of the adjudicatory hearing, her counsel argued that, pursuant to C.J. § 3–8A–15,

a child may be placed in detention for, to protect the child or others, or if the child is likely to leave. And then it talks about how continuation of detention under section (d) if they are not released then they shall immediately file petition to authorize detention and have a hearing. And I think that the rules contemplate at that hearing for continued detention as it's done in most jurisdictions, the petition is filed at that time. Otherwise I'm just not sure how the Court's getting to jurisdiction to authorize continued detention.

Noting that appellant was released on May 7th on electronic monitoring, and after agreeing with appellant's counsel's suggestion that this was still detention, the juvenile court ruled on this motion as follows:

But I think that the time line I have to agree with [the State] begins with the filing of a petition. Why the petition was not filed sooner I can't answer. I don't know why it was not filed sooner. She was detained on April 22nd. The petition was filed on May 13, she was released on home detention prior to the filing of the petition. Judge Earnest

denied the motion. I'm going to deny the motion. It's an interesting question and I'm glad you raised it.

After denying appellant's renewed motion, the juvenile court then heard argument on a different issue related to appellant's demand for the presence of the chemist under C.J. § 10–1003. While the chemist was not listed as a witness on the petition, the State proffered that it sent appellant's counsel a copy of the drug analysis report on June 9, 2008, and that the name of the chemist was included on that report. After appellant filed the demand pursuant to C.J. § 10–1003, the State then subpoenaed the chemist to testify. The State informed the court that appellant was now objecting to the chemist's testimony on the grounds that the State failed to provide notice that the chemist would testify. After learning that the chemist was present and prepared to testify, the court initially ruled that the State satisfied appellant's request.

Thereafter, appellant's counsel stated that filing a demand for a chemist was her normal practice, and that such a demand did not "absolve[ ] the State of their duty for continued discovery." After stating that the purpose of the demand was to "have our Sixth Amendment right to confront and cross-examine people," appellant then moved to exclude the chemist's testimony because the State failed to comply with its duty of continuing discovery under Maryland Rule 11–109. The following then ensued:

THE COURT: Address the prejudice issue. Tell me how you have been prejudiced. Have you not seen the report?

[APPELLANT'S COUNSEL]: Your Honor, I have reviewed the report.

THE COURT: So have you been prejudiced in anyway [sic] by the late production of the report or the fact that [the State] did not supply that in the normal course of discovery?

[APPELLANT'S COUNSEL]: I didn't prepare questions for a chemist. I wasn't anticipating a chemist being here. And for some . . .

THE COURT: But aren't we talking about an issue were the chemist not here, you would be standing here telling me

another story. You would say, all right, I demanded the chemist, he's not here, State cannot go forward.

[APPELLANT'S COUNSEL]: No, if the chemist were not here the State would not be able to prove their case. I wouldn't be objecting to that. I wouldn't be saying bring the chemist in. If I had gotten notice that the chemist was going to be here and demanded their presence and they weren't here, the burden's on the State to produce this case.

THE COURT: I agree but the sword cuts both ways. Had [the State] not produced the chemist today you would be standing here in front of me saying something entirely different. You would say to me, Judge, I demanded a chemist to be here, he's not here, the State cannot go forward and I would agree with you. I'd have to agree with you because you had made the demand. You made the demand, he is here, we will go forward. I'm going to deny your motion.

The juvenile court then proceeded to hear evidence from the State's first witness, PFC Larrimore. PFC Larrimore was on duty on April 20, 2008, at approximately 10:03 p.m., in the area of 12 North Washington Street in Easton, Maryland. Conducting surveillance of the area from a concealed position near some bushes in front of the circuit courthouse, PFC Larrimore observed appellant in a "very well lit" area, near a bench in front of the Courthouse Square shops, with approximately three other individuals.

PFC Larrimore testified that he was approximately 50 feet away from the group, and that he could "absolutely" hear what this group was saying from his concealed position. He observed this group for approximately forty minutes, and during that time, a person known to PFC Larrimore as Conrad Frederick "Rickey" Horney approached. According to PFC Larrimore, appellant told a person in the group named "Mushaw," "ask him." Mushaw then asked Horney, "do you have any weed?" Horney responded, "no, I'm trying to score some myself."

A short time later, Brandon Sinclair approached appellant's group and began a conversation. During that discussion, PFC Larrimore heard appellant ask Sinclair, "hey do you have any weed?" PFC Larrimore then testified:

> At which point Mr. Sinclair said actually I do. Then Mr. Mushaw asked Mr. Sinclair how much do you have. Then Mr. Sinclair replied three grams. He pulled an item out of his pocket and showed it to both [appellant] and Mr. Mushaw. At that point [appellant] stated to Mr. Sinclair, her exact words were, you should let me buy a gram from you. Will you let me buy a gram?

PFC Larrimore then testified about his observations after this discussion between appellant and Sinclair, as follows:

> [Appellant] continued to clutch whatever item she had retrieved from her pocketbook in her hand. She tried several times. It appeared she tried several times to hand it to Mr. Sinclair. Each time that they tried to do this it was approximately three or four times that this was attempted. Each time that it was attempted, there's a business two doors down that's called Scoccia's that was currently [sic] had clientele out front and folks were walking to and from that restaurant. As they would walk from the restaurant [appellant] would place her hand down and Mr. Sinclair would not approach her. As they would walk away she would attempt to hand him the item again, Mr. Sinclair would approach her and the people would walk away again.[2]

Appellant, Mushaw, and Sinclair then discussed how to smoke the "weed," and Mushaw indicated that he would buy a soda, empty the can, and then "they could all smoke weed by using the can." At around this same time, Sinclair produced a number of window chalk markers, handed them out to the others, and then, for some unknown reason, appellant, Mushaw, and a person named "Fifer" began to write on the

---

2. Upon subsequent questioning by the juvenile court, PFC Larrimore testified that he could not see what appellant was clutching in her hand at this time.

nearby store windows with those markers. At this point, PFC Larrimore had police officers respond, and he emerged from his concealed surveillance location.

After detaining the subjects, PFC Larrimore then searched Sinclair and recovered from his front left hand pocket a clear ziploc baggie containing three smaller ziploc baggies. Those smaller ziploc baggies contained a "green vegetable matter." That substance was packaged and sent to the drug lab for analysis. No marijuana was recovered from appellant's person.

The State next called Catherine Savage, a forensic scientist with the Maryland State Police Forensics Scientist Division. Over appellant's objection, the court accepted Savage as an expert forensic scientist in the field of controlled dangerous substances. Savage testified that she analyzed State's Exhibit 1 in this case, the green vegetable matter seized from Sinclair, and that this substance was 1.8 grams of marijuana, a Schedule I controlled dangerous substance.

At the conclusion of this evidence, appellant's counsel moved to dismiss the charges for failure to prove the chain of custody. Appellant also made a motion for judgment of acquittal, contending that, because no marijuana was recovered from appellant, and no testimony was adduced concerning money, the State had failed to establish that appellant made a substantial step towards possession of the marijuana. The State did not respond to the chain of custody motion, but responded that the facts were sufficient to establish attempted possession of marijuana. *The court denied both motions.*

After appellant exercised her right not to testify, appellant rested her case without producing any evidence. Appellant then renewed her motion for judgment of acquittal, maintaining that the State had failed to prove a substantial step towards the purchase of marijuana. Appellant also questioned the ability of PFC Larrimore to actually hear the conversations from his surveillance location.

The court ruled that appellant was involved in the attempted possession of marijuana. In support of that ruling, the

court found that PFC Larrimore "was stationed in a location that he could see what was going on and he could hear what was going on. But I have nothing to tell me to the contrary that he was not able." Further, the court stated:

So the Court certainly can conclude from his testimony that he had an opportunity to see and hear what he testified to. And then he testified that he heard [appellant] say to Mr. Mushaw, when Conrad Horney approached the group, Mr. Horney came up [to] the group and [appellant] asked Mr. Mushaw to ask Horney if he had any weed. We don't know exactly what took place after that but then Mr. Sinclair appears on the scene. And I don't know whether we have an exit on Horney and an entry of Sinclair but we do know that Sinclair comes on the scene and [appellant] asked Mr. Sinclair if he had any weed. And the next phrase was, let me buy a gram. I think that we all over time learn that the lexicon of the street is something that is unlike what we understood common terms to mean when we were much younger. The phrase weed or the term weed means much, much more than than [sic] it did 10 or 15 years ago. In fact I suspect that when someone uses the word weed it doesn't refer to crabgrass and lawn growth any longer. Because weed is certainly to younger folks and to this member of the Court having been in courtrooms now for 40 years means exactly what it is intended to mean, and that is marijuana. It doesn't mean smack or anything but marijuana. And that of course is bolstered and buttressed by the fact that Mr. Sinclair was found to have marijuana on his person by the officer when he apprehended him. So the Court is satisfied beyond a reasonable doubt that [appellant] did in fact attempt to possess marijuana on or about April 20th, 2008. I don't know what she had in her purse but certainly the evidence is that she had the ability to make the purchase or she would not have approached someone and asked to buy a gram. It wouldn't make much sense to go up to someone and say do you have any weed let me buy a gram if one were not in the position to carry it forward [sic] that request. So the Court finds that the evidence of this case

does support a finding of involved. And the Court will find that [appellant] is in fact involved as a result of the occurrence of April 20th, 2008.

On July 17, 2008, the juvenile court held a disposition hearing in this case, as well as another case where the court previously found appellant involved in the unauthorized removal of an automobile. After hearing recommendations from the Department and the State, and after hearing from appellant, her mother, Suzanne N., her sister, Sara M., and her counsel, the juvenile court adopted the recommendations of the Department, found appellant to be a delinquent child, and then committed her to the care and custody of her sister, Sara M., under the supervision of the Department. The juvenile court also ordered standard as well as special conditions, including that appellant successfully complete outpatient addictions and mental health treatment programs, and complete her education. This timely appeal followed.

We will include additional facts in the following discussion.

## DISCUSSION

### I.

■ Appellant first contends that the juvenile court erred in denying her motion to hold the adjudicatory hearing within sixty days. Citing generally C.J. § 3–8A–15, and more specifically, Rule 11–114(b), appellant asserts that, when the court granted the Department's petition for continued detention or shelter care on April 22, 2008, ordering that appellant may be a delinquent child, that "[t]his notice of pending delinquency proceedings should have triggered the start of the 60–day time period for holding an adjudicatory hearing."

The State responds that the adjudicatory hearing was held within the proper time frame in this case, pursuant to Rule 11–114(b). The State specifically asserts that, "under the plain language of the rule, the triggering event is the service of the delinquency petition upon the juvenile." Because appellant was actually served on June 26, 2008, the date of the

adjudicatory hearing, the State contends that the juvenile court properly denied appellant's motion. For the following reasons, we hold that, pursuant to Rule 11–114(b)(1), the adjudicatory hearing was held within sixty days after the juvenile petition was served and thus the juvenile court properly denied appellant's motion.[3]

■ Maryland has adopted "a separate system for juvenile offenders, civil in nature." *In re Victor B.*, 336 Md. 85, 91, 646 A.2d 1012 (1994); *accord In re Areal B.*, 177 Md.App. 708, 714, 938 A.2d 43 (2007) ("Juvenile causes are civil, not criminal proceedings."). The Juvenile Causes Act ("the Act"), codified at C.J. §§ 3–8A–01 to –34, "grant[s] jurisdiction in juvenile courts over young offenders and establish[es] the process for treating them, to advance its purpose of rehabilitating the juveniles who have transgressed to ensure that they become useful and productive members of society." *Lopez–Sanchez v. State*, 155 Md.App. 580, 598, 843 A.2d 915 (2004), *aff'd*, 388

---

**3.** During argument on her renewed motion in the juvenile court, appellant's counsel asserted that, generally, a petition is filed at the same time as the hearing for detention or shelter care pursuant to C.J. § 3–8A–15(d). We note that, under that Rule, "[a]n adjudicatory or waiver hearing shall be held no later than 30 days after the date a petition for detention or community detention is granted." C.J. § 3–8A–15(d)(6)(i). Further, that statute provides additional requirements for continued detention or community detention beyond an emergency detention. *See* C.J. § 3–8A–15(e). Although appellant generally cited C.J. § 3–8A–15 in her motion to the juvenile court, as well in her brief in this Court, appellant does not contend that a thirty-day time limit applies in this case. We also note that we have not been asked to address appellant's assertion before the juvenile court, and that court's apparent agreement, that appellant's conditional release remained a form of "detention." *Cf. Deville v. State*, 383 Md. 217, 221 n. 1, 858 A.2d 484 (2004) ("Home detention is a penal sanction most accurately characterized as a form of punishment less severe than retributive incarceration, but more serious than reformative probation."). Instead, appellant maintains that the adjudicatory hearing should have been held within the sixty-day time limit of Maryland Rule 11–114(b). Accordingly, any argument appellant raised in the juvenile court under different provisions of C.J. § 3–8A–15 is not before us. *See Moosavi v. State*, 355 Md. 651, 660, 736 A.2d 285 (1999) ("[I]f a point germane to the appeal is not adequately raised in a party's brief, the [appellate] court may, and ordinarily should, decline to address it." (Internal quotations on omitted) (second bracket in original).).

Md. 214, 879 A.2d 695 (2005), *cert. denied,* 546 U.S. 1102, 126 S.Ct. 1042, 163 L.Ed.2d 876 (2006). The Act is to be "liberally construed to effectuate [its] purposes." C.J. § 3–8A–02(b).

■ Pertinent to issues raised in this case, a "[d]elinquent act" is "an act which would be a crime if committed by an adult." C.J. § 3–8A–01(*l*). A "[d]elinquent child is a child who has committed a delinquent act and requires guidance, treatment, or rehabilitation." C.J. § 3–8A–01(m). After a petition or citation has been filed under the Act, the court shall first hold an adjudicatory hearing. C.J. § 3–8A–18(b); Rule 11–114. At that hearing, the allegations against the child must be proven beyond a reasonable doubt. C.J. § 3–8A–18(c); Rule 11–114(e). After the adjudicatory hearing, the court must hold a separate disposition hearing. C.J. § 3–8A–19(b); Rule 11–115. At disposition, the court should determine: "(1) [w]hether a child needs or requires guidance, treatment, or rehabilitation; and if so (2) [t]he nature of the guidance, treatment, or rehabilitation." C.J. 3–8A–01(p). As this Court has explained:

"The process by which a child is determined to be delinquent consists of a two-step procedure: an adjudicatory hearing, then a disposition hearing. Only after the adjudicatory judge finds that the child has committed a delinquent act and the dispositional judge finds that the juvenile is in need of guidance, treatment or rehabilitation, can a juvenile be classified as a 'delinquent child.'"

*In re Charles K.,* 135 Md.App. 84, 93–94, 761 A.2d 978 (2000) (emphasis omitted) (quoting *In re George V.,* 87 Md.App. 188, 190–91, 589 A.2d 521 (1991)).

This issue concerns the scheduling of the adjudicatory hearing under Rule 11–114(b)(1). That rule provides, in pertinent part:

b. **Scheduling of hearing.** 1. Adjudicatory hearing. An adjudicatory hearing shall be held within sixty days after the juvenile petition is served on the respondent unless a waiver petition is filed, in which case an adjudicatory hearing shall be held within thirty days after the court's decision

to retain jurisdiction at the conclusion of the waiver hearing. However, upon motion made on the record within these time limits by the petitioner or the respondent, the administrative judge of the county or a judge designated by him, for extraordinary cause shown, may extend the time within which the adjudicatory hearing may be held. The judge shall state on the record the cause which requires an extension and specify the number of days of the extension.

Under the plain language of Rule 11–114(b)(1), the adjudicatory hearing is to be held within sixty days after the petition is *served* on the juvenile. The record in this case shows that service was attempted on appellant on May 23, 2008, but that appellant was not actually served with the petition until June 26, 2008. Therefore, the adjudicatory hearing was held in a timely manner pursuant to Md. Rule 11–114(b); *see also In Re Ryan S.*, 369 Md. 26, 48–49, 797 A.2d 39 (2002) (stating that juveniles "have a right to have timely and continuous adjudication so that a determination can be made, as quickly as possible, as to whether the juvenile is involved or not involved in the alleged delinquent act").

■ Moreover, even were we to conclude that there was a violation of Rule 11–114(b), dismissal is not an appropriate sanction under the facts of this case.[4] The Court of Appeals has made clear that " 'only the most extraordinary and egregious circumstances should be allowed to dictate dismissal as the sanction for this violation of a procedural rule.' " *In re Timothy C.*, 376 Md. 414, 434, 829 A.2d 1024 (2003) (quoting *In re Keith W.*, 310 Md. 99, 109, 527 A.2d 35 (1987)). As the Court said in *In re Keith W.*:

As we see it, the foremost consideration in the disposition of a juvenile proceeding should be a course of treatment and rehabilitation best suited to promote the full growth and development of the child. Only the most extraordinary and egregious circumstances should be allowed to dictate dis-

---

**4.** Appellant's motion in the juvenile court was captioned as a "Motion to Hold Adjudicatory Hearing Within Sixty Days," and did not specifically ask for dismissal for noncompliance with Rule 11–114(b).

missal as the sanction for this violation of a procedural rule. Thus, in determining whether dismissal is an appropriate sanction for a violation of Rule 914 [now Rule 11–114], a judge presiding over a juvenile cause should examine the totality of the circumstances as required by Rule 1–201.[5] In doing so, the judge must keep in mind the overriding purpose of the juvenile statute along with the fact that this purpose will ordinarily not be served by dismissal of the juvenile proceeding. Neither the juvenile nor society should be denied the benefits of the juvenile's rehabilitation because of a technical violation of Rule 914's scheduling requirements. Nevertheless, we do not foreclose the possibility that under some circumstances dismissal will be a proper sanction.

310 Md. at 109–10, 527 A.2d 35.

Appellant's claim is that she received "formal notice of the allegation" contained in the juvenile petition on April 22, 2008. Accordingly, appellant argues that the adjudicatory hearing should have been held on June 20, 2008. The adjudicatory hearing actually was held six days after appellant's suggested deadline, on June 26, 2008. We view appellant's claim as elevating form over substance, because there clearly was no inordinate delay in this case. Further, accepting appellant's argument that the adjudicatory hearing should have been held six days earlier does little to advance the underlying purpose of treating and rehabilitating juveniles alleged to be involved in the commission of a delinquent act. The juvenile court properly denied appellant's motion.

─────────

5. Rule 1–201(a) provides:
 (a) **General.** These rules shall be construed to secure simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay. When a rule, by the word "shall" or otherwise, mandates or prohibits conduct, the consequences of noncompliance are those prescribed by these rules or by statute. If no consequences are prescribed, the court may compel compliance with the rule or may determine the consequences of the noncompliance in light of the totality of the circumstances and the purpose of the rule.

## II.

▮ Appellant next contends that the juvenile court erred when it permitted the forensic chemist to testify, because the State failed to provide the proper notice pursuant to Maryland Rule 11–109(a)(3)(c). Appellant also maintains that she was denied her constitutional rights to confront and cross-examine the witness, because she was deprived of the opportunity to prepare for the witness's testimony. The State does not respond to appellant's constitutional claim, but maintains that there was no discovery violation under the Rule and that the juvenile court properly exercised discretion as the chemist was subpoenaed in response to appellant's demand pursuant to C.J. § 10–1003. We hold that the trial court properly exercised its discretion in this case.

Regarding appellant's discovery claim under Rule 11–109, that rule requires the State, without the necessity of a request by the juvenile, to provide "the name and address of each person whom the State intends to call as a witness at any hearing to prove its case in chief or to rebut alibi testimony to the extent then known[.]" Rule 11–109(a)(3)(c). Further, there is a continuing duty to disclose additional information when "a party learns of additional information previously requested and required to be furnished...." Rule 11–109(a)(8). The rule also provides a range of discretionary sanctions for non-compliance. Rule 11–109(a)(9).

▮ Although Rule 11–109 governs discovery in juvenile proceedings, the criminal counterpart to this rule, Rule 4–263, provides us with guidance. As the Court of Appeals has stated, "[d]iscovery questions generally involve a very broad discretion that is to be exercised by the trial courts. Their determinations will be disturbed on appellate review only if there is an abuse of discretion." *Cole v. State,* 378 Md. 42, 55, 835 A.2d 600 (2003) (internal citations omitted). Further, although factual findings of the trial court are not upset unless clearly erroneous, the question whether a discovery violation occurred under the Maryland Rules is reviewed *de novo. Id.* at 56, 835 A.2d 600. "Where a discovery rule has been

violated, the remedy is, 'in the first instance, within the sound discretion of the trial judge. The exercise of that discretion includes evaluating whether a discovery violation has caused prejudice.'" *Id.* (quoting *Williams v. State,* 364 Md. 160, 178, 771 A.2d 1082 (2001)).

Here, the State initially informed appellant in the petition, filed on May 13, 2008, that PFC Larrimore would be the State's sole witness. On June 9, 2008, the State provided appellant's counsel with a copy of the chemist's drug analysis as well as the chemist's name. Thereafter, on June 10, 2008, appellant's counsel filed a demand for the presence of the chemist at trial. The State then subpoenaed the chemist, but apparently did not supplement the discovery by notifying appellant's counsel that the chemist would now testify. This appears to be a violation of Rule 11–109(a)(8), which requires a party to supplement discovery when that party "learns of additional information previously requested and required to be furnished. . . ."

 Assuming a discovery violation, the juvenile court nevertheless properly exercised discretion in permitting the chemist to testify because appellant was not prejudiced in this case. Whether to impose sanctions for a discovery violation is within the discretion of the trial court. *See Thomas v. State,* 397 Md. 557, 570, 919 A.2d 49 (2007) (noting that the discovery rule "does not require the court to take any action; it merely authorizes the court to act" (internal citations omitted)). Further, "[t]he most accepted view of discovery sanctions is that in fashioning a sanction, the court should impose the least severe sanction that is consistent with the purpose of the discovery rules." *Id.* at 571, 919 A.2d 49. "Exclusion of evidence for a discovery violation is not a favored sanction and is one of the most drastic measures that can be imposed." *Id.* at 572, 919 A.2d 49.

Appellant's counsel agreed that she had reviewed the chemist's report concerning the marijuana prior to trial. Although appellant's counsel asserted that she did not prepare questions for a chemist, we observe that the report was provided in

discovery on June 9, 2008, approximately seventeen days prior to the trial on June 26, 2008. Additionally, we note that, when the State raised this issue at trial, appellant did not ask for a continuance to prepare for the chemist's testimony. Under these circumstances, the trial court could properly conclude that appellant was not prejudiced. *Id.* at 574–75, 919 A.2d 49 (concluding that petitioner was not prejudiced and observing that petitioner did not seek a continuance for the belated disclosure, but instead, sought the windfall of exclusion).

As to appellant's constitutional claim, we have recognized that the Supreme Court has extended various constitutional protections to juvenile proceedings, including notice of charges; right to counsel; right to confrontation and cross-examination; and the privilege against compulsory self-incrimination. *In re Appeal No. 977,* 22 Md.App. 511, 516, 323 A.2d 663 (1974) (citing *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)). However, "a criminal defendant's constitutional right to cross-examination is not boundless." *Parker v. State,* 185 Md.App. 399, 426, 970 A.2d 968 (2009). "The question is 'whether the trial judge imposed limitations upon cross-examination that inhibited the ability of the defendant to receive a fair trial.'" *Id.* (quoting *Pantazes v. State,* 376 Md. 661, 681–82, 831 A.2d 432 (2003)).

Appellant claims that she was "deprived of the opportunity to prepare questions for this witness as a consequence of the court's ruling." Appellant has not cited any pertinent authority for that premise, and we note that the Supreme Court has stated that "the Confrontation Clause only protects a defendant's trial rights, and does not compel the pretrial production of information that might be useful in preparing for trial." *Pennsylvania v. Ritchie,* 480 U.S. 39, 53 n. 9, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). Further,

> [t]he ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony. Normally the right to confront one's accusers is satisfied if defense counsel receives wide

latitude at trial to question witnesses. In short, the Confrontation Clause only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."

*Id.* at 53, 107 S.Ct. 989 (citation and footnote omitted) (emphasis in original).

Although appellant's cross-examination of Savage was not extensive and primarily focused on the chain of custody, there is no indication in the record that appellant's ability or opportunity to question Savage at trial was restricted by the juvenile court. Further, we again note that appellant's counsel agreed that she had reviewed the chemist's report, and the record indicates counsel had that report for over two weeks prior to the adjudicatory hearing. Under the circumstances of this case, we conclude that appellant was not denied her right to confrontation.

■ In addition, we also hold that any error, constitutional or otherwise, was harmless. *See In re Yve S.*, 373 Md. 551, 616, 819 A.2d 1030 (2003) ("[I]t has long been settled policy of this court not to reverse for harmless error." (Internal citations omitted).). Based on appellant's motion for judgment of acquittal and closing argument, it appears that appellant's theory of the case primarily focused on (1) the credibility of PFC Larrimore; (2) the fact that no marijuana was recovered from appellant's person and no one witnessed an exchange of money; and (3) the fact that there may have been a problem in the chain of custody of the drugs recovered from Sinclair. There was no indication that this theory would be adversely impacted by the chemist's opinion that those drugs were actually marijuana. Indeed, when the chemist's report was offered into evidence, appellant stated that "my objection is that all the people in the chain of custody aren't here." Given that the actual cross-examination of the chemist focused on chain of custody issues, and not the chemist's opinions or conclusions, we conclude that any error was harmless beyond a reasonable doubt.

### III.

■ Finally, appellant asserts that the evidence was insufficient to sustain the finding that she was involved in the attempted possession of marijuana. The State responds that the evidence was sufficient, because the evidence "establish[es] several substantial steps towards the commission of the crime of possession of marijuana." We agree with the State.

■ As indicated, an allegation that a juvenile has committed a delinquent act must be proven beyond a reasonable doubt. C.J. § 3–8A–18(c); Rule 11–114(e)(1). The evidence is legally sufficient to meet this standard in a juvenile delinquency case if, "after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *In re Timothy F.*, 343 Md. 371, 388, 681 A.2d 501 (1996) (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *accord In re Anthony W.*, 388 Md. 251, 261, 879 A.2d 717 (2005). Further, "[j]udging the weight of evidence and the credibility of witnesses and resolving conflicts in the evidence are matters entrusted to the sound discretion of the trier of fact." *In re Timothy F.*, 343 Md. at 379, 681 A.2d 501. Finally, "we have held that the judgment of the trial court will not be disturbed unless the trial judge's findings of fact are clearly erroneous." *In re Anthony W.*, 388 Md. at 261, 879 A.2d 717.

Maryland Code (2002), § 5–601(a) of the Criminal Law Article ("C.L.") makes it unlawful to "possess or administer to another a controlled dangerous substance, unless obtained directly or by prescription or order from an authorized provider acting in the course of professional practice." " 'Possess' means to exercise actual or constructive dominion or control over a thing by one or more persons." C.L. § 5–101(u). Thus, in order to support a conviction for a possessory offense, the "evidence must show directly or support a rational inference that the accused did in fact exercise some dominion or control over the prohibited narcotic drug in the sense contem-

plated by the statute, *i.e.*, that [the accused] exercised some restraining or directing influence over it." *Garrison v. State,* 272 Md. 123, 142, 321 A.2d 767 (1974); *accord State v. Suddith,* 379 Md. 425, 432, 842 A.2d 716 (2004). Further, "[i]t has long been established that the mere fact that the contraband is not found on the defendant's person does not necessarily preclude an inference by the trier of fact that the defendant had possession of the contraband." *Suddith,* 379 Md. at 432, 842 A.2d 716.

This case concerns the attempted possession of a controlled dangerous substance. For the crime of attempt, the Court of Appeals has explained:

Under Maryland common law, the attempt to commit a crime is, itself, a separate misdemeanor. It is, however, an "adjunct crime" that "cannot exist by itself, but only in connection with another crime." The attempt thus attaches itself to the substantive offense and is committed when a person, with the intent to commit that substantive offense "engages in conduct which constitutes a substantial step toward the commission of that crime, whether or not his [or her] intention is accomplished."

*State v. North,* 356 Md. 308, 312, 739 A.2d 33 (1999) (citations omitted) (alteration in original).

Here, on April 20, 2008, at approximately 10:03 p.m., appellant was seen in front of 12 North Washington Street, in Easton, Maryland, by PFC Larrimore, with another group of individuals. PFC Larrimore indicated that the area was well lit and that he could hear the individuals's conversations from his surveillance location. At one point during the course of his forty minutes of observation of this group, PFC Larrimore heard appellant tell Mushaw, "ask him," at which time Mushaw asked Horney, "do you have any weed?" Horney responded, "no, I'm trying to score some myself."

A short time later, Sinclair arrived, and PFC Larrimore heard appellant ask Sinclair, "hey do you have any weed?" Further, PFC Larrimore testified that "her exact words were, you should let me buy a gram from you. Will you let me buy

a gram?" Thereafter, PFC Larrimore observed appellant retrieve an unknown item from her pocketbook, clutch it in her hands, and attempt on three or four occasions to hand it to Sinclair. Appellant, Mushaw, and Sinclair then discussed how to smoke the "weed," and Mushaw indicated that he would buy a soda, empty the can, and "they could all smoke weed by using the can."

The police then took the individuals into custody. The police recovered 1.8 grams of marijuana from Sinclair's person. Although no marijuana was recovered from appellant's person, these facts support a rational inference that appellant engaged in multiple substantial steps towards the commission of illegal possession of marijuana. Accordingly, the evidence was sufficient to sustain the juvenile court's finding that appellant was involved in the delinquent act of attempted possession of a controlled dangerous substance, to wit, marijuana.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**